JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Jessica Jennings

## DEFENDANTS
St. Luke's Health Network, Inc. t/d/b/a St. Luke's Hospital, St. Luke's Hospital of Bethlehem, PA, and St. Luke's University Health Network

**(b)** County of Residence of First Listed Plaintiff    Monroe
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mansour Law, LLC
961 Marcon Blvd., Ste. 425
Allentown, PA 18109 (610) 321-3538

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec. 2000e-1 et seq.
Brief description of cause:
Religious discrimination

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____ DOCKET NUMBER _____

DATE
03/30/2023

SIGNATURE OF ATTORNEY OF RECORD
*William P. Mansour*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 123 Schwartz Lane, Saylorsburg, Monroe County, PA 18353 _____

Address of Defendant: _____ 801 Ostrum Street, Bethlehem, Northampton County, PA 18015 _____

Place of Accident, Incident or Transaction: _____ 801 Ostrum Street, Bethlehem, PA 18015 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____ 03/30/2023 _____   *William P. Mansour* _____   _____ 318833 _____
*Attorney-at-Law / Pro Se Plaintiff*                      *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.    Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☒ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.    Diversity Jurisdiction Cases:**

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ William P. Mansour _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: _____ 03/30/2023 _____   *William P. Mansour* _____   _____ 318833 _____
*Attorney-at-Law / Pro Se Plaintiff*                      *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Jessica Jennings, o/b/o herself and all others similarly situated | : : : | CIVIL ACTION |
| v. | : : | |
| St. Luke's Health Network, Inc. | : : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.　　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)　　　　　( x )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　　　　( )

| | | |
|---|---|---|
| 03/30/2023 | William P. Mansour | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (610) 321-3538 | (610) 798-1345 | wpm@themansourfirm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JESSICA JENNINGS, on behalf of herself and all others similarly situated, ) ) ) | No. _____ |
| Plaintiff, ) ) | CIVIL ACTION – LAW |
| v. ) ) | |
| ST. LUKE'S HEALTH NETWORK, INC. t/d/b/a ST. LUKE'S HOSPITAL, ST. LUKE'S HOSPITAL OF BETHLEHEM, PENNSYLVANIA and ST. LUKE'S UNIVERSITY HEALTH NETWORK, ) ) ) ) ) ) | COMPLAINT – CLASS ACTION JURY TRIAL DEMANDED |
| Defendant. ) ) | |

### CLASS ACTION COMPLAINT

NOW COMES, JESSICA JENNINGS ("Ms. Jennings"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, who hereby complains against ST. LUKE'S HEALTH NETWORK, INC. t/d/b/a ST. LUKE'S HOSPITAL, ST. LUKE'S HOSPITAL OF BETHLEHEM, PENNSYLVANIA and ST. LUKE'S UNIVERSITY HEALTH NETWORK ("SLUHN") as follows:

### PRELIMINARY STATEMENT

1.    This action arises under Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000e-1, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, 42 P.S. § 951, *et seq.* ("PHRA"). Specifically, as set forth in more detail herein, for over a year, SLUHN has maintained and enforced a company-wide policy of charging employees who received a religious exemption from its COVID-19 vaccine mandate (like Ms. Jennings and the proposed Class Members) a higher group health insurance premium than *every other employee*, including those who received exemptions or deferrals from the mandate for non-religious reasons.

### PARTIES

2.    Ms. Jennings is an adult individual currently residing in Saylorsburg, Monroe County, Pennsylvania. Ms. Jennings is currently employed by SLUHN as a Licensed Practical Nurse (LPN) at Forks Township Care Now in Easton, Northampton County, Pennsylvania. She has been employed by SLUHN since approximately December 1, 2017.

3.      SLUHN is a Pennsylvania not-for-profit corporation that owns and operates a network of hospitals, outpatient facilities, labs, and urgent care centers in eastern Pennsylvania and Warren County, New Jersey. Its principal place of business is located at 801 Ostrum Street, Bethlehem, PA 18015. SLUHN regularly does business in Pennsylvania under the fictitious names "St. Luke's Hospital," "St. Luke's Hospital of Bethlehem, Pennsylvania," and "St. Luke's University Health Network."

4.      At all times relevant and material hereto, SLUHN employed at least 17,000 employees for each working day during each of twenty (20) or more working weeks in 2021 and 2022.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of the Title VII claims alleged herein pursuant to 28 U.S.C. § 1331 because such claims arise under the laws of the United States.

6.      This Court has jurisdiction over the subject matter of the PHRA claims alleged herein pursuant to 28 U.S.C. § 1367 because such claims form part of the same case or controversy as the Title VII claims and share a common nucleus of operative fact.

7.      This Court has personal jurisdiction over SLUHN because it is a Pennsylvania corporation that regularly conducts business in Pennsylvania and because the claims alleged herein arise directly from SLUHN's business activities in Pennsylvania.

8.      Venue in this district is proper under 28 U.S.C. § 1391(b)(1)-(2) because SLUHN regularly conducts business within this district and because the events giving rise to the claims alleged herein arose in this district.

9.      On March 30, 2022, Ms. Jennings, on behalf of herself and all others similarly situated, filed a Charge of Discrimination against SLUHN with the U.S. Equal Employment Opportunity Commission (EEOC), which was dual-filed with the Pennsylvania Human Relations Commission (PHRC), with respect to the claims alleged herein.

10.      On January 26, 2023, the EEOC issued Ms. Jennings a Notice of Right to Sue relative to her Charge, a true and correct copy of which is attached hereto as **EXHIBIT A.**

11.      Additionally, at least one (1) year has passed since Ms. Jennings dual-filed her Charge with the PHRC and there has been no resolution to date.

12.      Ms. Jennings has satisfied all other conditions precedent to the filing of this action.

**FACTUAL ALLEGATIONS COMMON TO ALL CLASS MEMBERS AND CLAIMS**

13.    On or about August 9, 2021, SLUHN instituted a written, company-wide policy requiring all employees, volunteers, and students to be fully vaccinated against COVID-19 by September 25, 2021. This policy permitted employees to apply for an exemption based on medical reasons or sincerely held religious beliefs. The policy also allowed employees to apply for a one-year deferral based on pregnancy or proof of recent COVID-19 infection.

14.    In early September 2021, Ms. Jennings applied for a religious exemption from SLUHN's vaccine mandate. On or about September 27, 2021, SLUHN granted Ms. Jennings' request for a religious exemption.

15.    As of July 2022, SLUHN has provided a religious exemption to at least 500 employees, including Ms. Jennings. Those employees who failed or refused to receive a COVID-19 vaccine by September 25, 2021 without obtaining an exemption or deferral were discharged by SLUHN.

16.    On or about October 29, 2021, SLUHN instituted a written, company-wide policy pursuant to which all employees, subject to many exceptions, would supposedly be charged an additional $1,100.00 per year over their 2021 rate for coverage under SLUHN's self-sponsored and self-funded group health insurance beginning on January 1, 2022.

17.    The details of this policy were set forth in an e-mail sent *only to employees who received a religious exemption*, like Ms. Jennings and the proposed Class Members. Indeed, the e-mail itself states: **"You are receiving this email because St. Luke's, at your request, has granted you an exemption from [its COVID-19 vaccine mandate] as a result of your sincerely held religious beliefs."** A true and correct copy of this email is attached hereto as **EXHIBIT B** and is incorporated herein by reference.

18.    SLUHN proceeded to explain in this email that, under its new policy, those employees who are (or become) **fully vaccinated** or who cannot get vaccinated for **medical reasons** can "earn" a "premium discount" equal to the $1,100.00 increase. The intended effect of this portion of the policy is to eliminate the premium increase for these employees thereby keeping their premiums the same as in 2021. ***See* Ex. B.**

19.    However, SLUHN's new policy deliberately provided no opportunity for employees who received a **religious exemption** from its COVID-19 vaccine mandate, like Ms. Jennings

and the proposed Class Members, to "earn" the "premium discount." ***See* Ex. B.** The purpose of this email, therefore, was simply to inform Ms. Jennings and the proposed Class Members that their annual health insurance premiums will be increasing by $1,100.00 per year starting January 1, 2022, unless they either get vaccinated or receive a medical exemption or deferral.

20. Between January 1, 2022 and the present, every employee who complied with, or obtained a medical exemption or deferral from, SLUHN's vaccine mandate has received the premium discount. As a corollary of this fact, only Ms. Jennings and the proposed Class Members have not received the discount and only they have been forced to pay the $1,100.00 increase since January 1, 2022.

21. No other employees except Ms. Jennings and the proposed Class Members received the October 29, 2021 email setting forth SLUHN's "premium discount" policy. In fact, to this very day, most of SLUHN's other 16,500 employees have no idea that their group health insurance premiums allegedly increased by $1,100.00 per year in 2022 and that they received, and continue to receive, an equivalent "discount" for being vaccinated or receiving a medical exemption or deferral.

22. The intended and reasonably foreseeable consequence of SLUHN's "premium discount" policy is that SLUHN's roughly 500 employees with religious exemptions—and ***only*** those employees—are paying $1,100.00 more per year for their health insurance over their 2021 rate (or $42.31 per pay period) and have been since the first week of 2022. The remaining 16,500 or so employees all received an $1,100.00 discount, supposedly "costing" SLUHN over $18 million in 2022 alone – far more than the $3.5 million in costs SLUHN alleges it incurred treating COVID-19 patients during the first 18 months of the pandemic.

23. At the time it instituted its "premium discount" policy in October 2021, SLUHN insisted that the $1,100.00 annual increase was necessitated by "more than $3.5 million in expenses over the past 18 months associated with COVID-related hospital care. A majority of this cost is attributed to caring for and treating our unvaccinated employees and their family members." ***See* Ex. B.** But despite this last and highly suspect claim, SLUHN is only charging unvaccinated employees with religious exemptions more for their health insurance instead of ***all*** unvaccinated employees. Even worse, those employees who were previously treated by SLUHN for COVID-19 and then got vaccinated are receiving the premium discount while employees with

4

religious exemptions who were never treated for COVID-19 are not—solely because they received religious exemptions.

24.    The only way for Ms. Jennings and the proposed Class Members to avoid paying more for their group health insurance is to violate their religious beliefs and receive a COVID-19 vaccination. Thus, SLUHN puts Ms. Jennings and the proposed Class Members in the untenable position of either paying more for their health insurance during a time of record inflation or abandoning their sincerely held religious beliefs.

25.    The intended effect of SLUHN's "premium discount" policy, therefore, is clear for all to see: to pressure unvaccinated employees with religious exemptions into getting vaccinated against COVID-19.

26.    Incredibly, SLUHN also attempts to frame its unlawful "premium discount" policy as the denial of an ***additional*** accommodation to employees with religious exemptions. "While your religious exemption permits you to remain employed at St. Luke's," SLUHN asserts, "we are unable to grant you an additional accommodation for a premium discount, since doing so would impose an undue hardship." ***See* Ex. B.**

27.    **First**, neither Ms. Jennings nor any other proposed Class Member ever requested a premium discount as an accommodation for their sincerely held religious beliefs. SLUHN's "premium discount" policy was imposed from the top down—not as an accommodation, but as a means of "encouraging" only employees with religious exemptions to receive the COVID-19 vaccine. Unlike its COVID-19 vaccine mandate, for example, SLUHN's "premium discount" policy imposes no universal, facially neutral requirement from which Ms. Jennings or other proposed Class Members sought an exemption based on their sincerely held religious beliefs. In other words, Ms. Jennings and the proposed Class Members do not seek to be treated *differently* from their similarly situated colleagues because of their religious beliefs; they seek to be treated *the same* despite them. What SLUHN did, instead, was unilaterally impose a burden only on employees with religious exemptions, and then claim that lifting that burden (or never imposing it to begin with) would be an "unreasonable accommodation." If, as SLUHN claims, the "premium discount" is a type of religious accommodation, then SLUHN would not have provided that same "accommodation" to its remaining 16,500+ employees who received no religious exemptions.

28.    **Second**, to the extent the stated purpose of SLUHN's "premium discount" policy was to recoup some of the costs allegedly associated with treating unvaccinated employees and their families, SLUHN did not inquire whether Ms. Jennings or any proposed Class Member or their families received COVID-related care from SLUHN and, therefore, should not qualify for the "premium discount." And even if it did so inquire, a $1,100.00 "premium discount" is *de minimis*, at best, for a massive, billion-dollar health network like SLUHN.

29.    **Third**, SLUHN has over 17,000 employees. Approximately 16,500 of them received the $1,100.00 annual "premium discount" in 2022, costing SLUHN more than $18 million that year alone. Providing that same discount to Ms. Jennings and the proposed Class Members would have cost SLUHN about $550,000.00 in 2022, roughly 3% of SLUHN's cost to provide the premium discount to its other employees. But SLUHN insists this would have imposed, and would continue to impose, costs and administrative difficulties far greater than those it took to give $18 million in discounts to its 16,500 other employees.

30.    On its face, SLUHN's "premium discount" policy unlawfully discriminates against Ms. Jennings and the proposed Class Members solely because their sincerely held religious beliefs prevent them from receiving the COVID-19 vaccine. If Ms. Jennings and the proposed Class Members held *different* religious beliefs that did not conflict with vaccination, or if they couldn't get vaccinated for medical reasons, SLUHN would have rewarded them with the $1,100.00 annual "premium discount."

31.    SLUHN's "premium discount" policy does not make a distinction between vaccinated employees and unvaccinated employees. Rather, the policy makes an unlawful distinction between unvaccinated employees with religious exemptions and ***everyone else***. It expressly precludes all unvaccinated employees with religious exemptions, like Ms. Jennings and the proposed Class Members, from "earning" the "premium discount" while giving every other employee (e.g. those who are vaccinated or received medical exemptions or temporary deferrals) the opportunity to do so.

32.    SLUHN's "premium discount" policy, therefore, is a term or condition of employment that discriminates against Ms. Jennings and the proposed Class Members based on their religion and sincerely held religious beliefs. SLUHN does not impose this same term or

condition of employment on any other employee, including those who remain unvaccinated for non-religious reasons.

33.     Moreover, as a result of SLUHN's "premium discount" policy, Ms. Jennings and the proposed Class Members have been denied a reasonable accommodation for their sincerely held religious beliefs insofar as they are now being charged a higher health insurance premium as a consequence of receiving the accommodation (*i.e.* the exemption from SLUHN's vaccine mandate). In effect, Ms. Jennings and the proposed Class Members are being charged a fee for their religious accommodations. In order to eliminate this fee, they must give up their religious accommodations and get vaccinated, thereby rendering the putative accommodations "unreasonable."[1]

34.     In addition, pursuant to its regular employment practices and policies, SLUHN pays a fixed, uniform percentage of every employee's group health insurance premium, the remainder being paid by the employee. SLUHN's "premium discount" policy unlawfully discriminates against employees with religious exemptions insofar as those employees must pay for the entire $1,100.00 premium increase without any contribution by SLUHN.

35.     This second layer of disparate treatment towards Ms. Jennings and the proposed Class Members based on their religion is best illustrated by a hypothetical. Assume Ms. Jennings' health insurance premium for 2021 was $6,000.00 and that, like it does for every employee, SLUHN paid 50% of that premium. Under that scenario, Ms. Jennings paid $3,000.00 and SLUHN paid $3,000.00 in 2021. Now assume that, following the $1,100.00 premium increase in 2022, Ms. Jennings' total health insurance premium for that year was $7,100.00. Because Ms. Jennings was forced to pay the entire $1,100.00 increase herself, her contribution towards her health insurance for 2022 was $4,100.00 while SLUHN's remained $3,000.00. Thus, under this example, Ms. Jennings contributed almost 58% towards her annual health insurance premiums while SLUHN contributed only 42% – about 8% less than it pays for other employees.

36.     By forcing Ms. Jennings and the proposed Class Members to shoulder the entire cost of the $1,100.00 premium hike, SLUHN has reduced its overall contribution percentage

---

[1] Using the "reasonable accommodation" requirement of the Americans with Disabilities Act (ADA) as an analogy, SLUHN's "premium discount" policy is akin to an employer charging a wheelchair-bound employee a fee for building an entrance ramp, which would be patently illegal under the ADA.

towards their total annual premiums. SLUHN's "premium discount" policy, therefore, has resulted in Ms. Jennings and the proposed Class Members paying a higher percentage of their annual health insurance premiums than all other employees solely because their religious beliefs conflict with SLUHN's vaccine mandate.

37.    Despite its claims to the contrary, SLUHN's "premium discount" policy is not about recouping costs related to COVID-19 care nor is it about ensuring that unvaccinated employees pay their "fair share." When one cuts through the clutter of SLUHN's convoluted justifications, the true motive behind its "premium discount" policy becomes clear: to "encourage vaccination efforts" so that it can continue to publicly boast that it is "a leader in the fight against COVID-19." In and of itself, such an objective is not unlawful or discriminatory and is, indeed, laudable. But, in pursuit of that goal, SLUHN has unlawfully (and regrettably) singled out for disparate treatment an entire class of employees who are exempt from receiving the COVID-19 vaccine because of their religious beliefs.

## CLASS ALLEGATIONS

### Class Definition

38.    Pursuant to Fed.R.Civ.P. 23(b)(3) and Local Rule 23.1, Ms. Jennings brings this action on her own behalf and as a class action on behalf of a class of persons defined as follows:

> all persons currently or previously employed by SLUHN who received a religious exemption from SLUHN's COVID-19 vaccination requirement and paid an additional $42.31 towards their employer-sponsored group health insurance premium during any pay period between January 1, 2022 and the present.

39.    Upon information and belief, the above-defined class is currently comprised of approximately 500 individuals, including Ms. Jennings.

### Typicality

40.    Ms. Jennings and the proposed Class Members all have tangible and legally protectable interests at stake in this action.

41.    Ms. Jennings' claims and those of the proposed Class Members have a common origin and share a common basis. Their claims originate from the same illegal, discriminatory "premium discount" policy created and enforced by SLUHN.

42.    Ms. Jennings and the proposed Class Members all state claims for which relief can be granted that are typical of each other. If brought and prosecuted individually, the claims of Ms.

Jennings and each proposed Class Member would necessarily require proof of the same material and substantive facts, rely upon the same legal theories, and seek the same relief.

<b>Numerosity</b>

43.     The proposed Class Members are so numerous (currently estimated to be at least 500) that joining them all individually in a single action is impracticable. The proposed Class Members are, however, easily ascertainable from payroll, personnel, and other business records kept and maintained by SLUHN.

<b>Commonality</b>

44.     The questions of law and fact common to Ms. Jennings and the proposed Class Members include, without limitation:

    a.     Whether SLUHN increased the group health insurance premiums of Ms. Jennings and the proposed Class Members by $1,100.00 per year ($42.31 per bi-weekly pay period) starting on January 1, 2022;

    b.     Whether SLUHN withheld an additional $42.31 from the paychecks of Ms. Jennings and the proposed Class Members during any pay period between January 1, 2022 and the present to pay for the $1,100.00 premium increase;

    c.     Whether SLUHN's "premium discount" policy and the consequent $1,100.00 annual premium increase for Ms. Jennings and the proposed Class Members constitutes discrimination based on religion in violation of Title VII and the PHRA;

    d.     Whether SLUHN's failure to pay its proportionate share of the $1,100.00 annual premium increase for Ms. Jennings and the proposed Class Members constitutes discrimination based on religion in violation of Title VII and the PHRA; and

    e.     Whether SLUHN's "premium discount" policy and the consequent $1,100.00 annual premium increase for Ms. Jennings and the proposed Class Members constitutes a failure to reasonably accommodate their sincerely held religious beliefs in violation of Title VII and the PHRA

9

45.     These questions of law and fact predominate over any such questions affecting only individual proposed Class Members. As such, a class action is superior to other available methods for the fair and efficient adjudication of the controversies alleged herein because the costs of litigating the individual claims of each proposed Class Member would far exceed the monetary value of what any one of them has at stake.

## Adequate Representation

46.     Ms. Jennings is willing and able to serve the Court and the proposed Class Members in a representative capacity with all of the obligations and responsibilities attendant thereto. Ms. Jennings will fairly and adequately protect the interests of the proposed Class Members and has no interests adverse to, or in conflict with, any of the proposed Class Members.

47.     Ms. Jennings has engaged the services of counsel indicated below. Said counsel are experienced in federal class actions and employment litigation, will adequately prosecute this case, and will assert, protect, and otherwise defend the rights and interests of Ms. Jennings and all proposed Class Members.

## COUNT I

### DISCRIMINATION BASED ON RELIGION IN VIOLATION OF
### 42 U.S.C. § 2000e-2(a)(1), TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

48.     All preceding allegations are incorporated herein by reference as if same were set forth more fully at length.

49.     Ms. Jennings and the proposed Class Members, although likely of different religions or creeds, all have sincere religious beliefs that preclude them from receiving a COVID-19 vaccine. SLUHN has acknowledged both the religious nature of those beliefs and their sincerity by granting Ms. Jennings and the proposed Class Members exemptions from its COVID-19 vaccine mandate as a reasonable accommodation for those beliefs.

50.     But since October 28, 2021, and continuing through the present, SLUHN has maintained and enforced its "premium discount" policy, which has the stated purpose and effect of charging Ms. Jennings and the proposed Class Members $1,100.00 more per year for their group health insurance premiums because—and ***only*** because—they received a religious exemption based on sincere religious beliefs that prevent them from receiving a COVID-19 vaccine. If Ms. Jennings and the proposed Class Members held *different* religious beliefs that did

not conflict with vaccination, SLUHN would have rewarded them with the $1,100.00 annual "premium discount."

51.    As a direct and proximate result of SLUHN's discriminatory "premium discount" policy, Ms. Jennings and the proposed Class Members have had, and continue to have, $42.31 automatically deducted from their bi-weekly paychecks since January 1, 2022. In effect, SLUHN has significantly reduced the take-home pay of Ms. Jennings and the proposed Class Members solely because of their religious beliefs.

52.    SLUHN's "premium discount" policy, on its face, deliberately discriminates against employees whose religious beliefs interfere with its ambitious vaccination campaign. It was addressed and disseminated only to those employees and shrewdly marked "confidential" in an effort to prevent others from learning about it. SLUHN even admitted to the EEOC that its "premium discount" policy "can create the perception that it targeted employees based on religion." But perception is reality, and SLUHN either knew that its "premium discount" policy constituted religious discrimination under Title VII or didn't care if it did. As such, SLUHN's "premium discount" policy was implemented willfully and in knowing violation of federal law and with reckless indifference to the federal rights of Ms. Jennings and the proposed Class Members.

**WHEREFORE**, Plaintiff Jessica Jennings, on behalf of herself and the proposed Class Members, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant St. Luke's Health Network, Inc. and award the following relief:

a.    An order permanently enjoining SLUHN, and any affiliated or related entity over which it exercises control, from enforcing the current "premium discount" policy and from promulgating any similar policy that treats employees with religious exemptions from SLUHN's COVID-19 vaccine mandate differently than other employees;

b.    Restitution/back pay in an amount equal to all additional group health insurance premiums paid by Ms. Jennings and the proposed Class Members above the 2021 rate for all pay periods between January 1, 2022 and the date of judgement, plus pre-and post-judgment interest;

c.    Compensatory damages in an amount to be determined at trial;

d.    Punitive damages in an amount to be determined at trial;

     e.    All costs and reasonable attorney's fees; and

     f.    Any other relief deemed proper and just.

**COUNT II**

**DISCRIMINATION BASED ON RELIGION IN VIOLATION OF**
**42 U.S.C. § 2000e-2(a)(1), TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

53.    All preceding allegations are incorporated herein by reference as if same were set forth more fully at length.

54.    Pursuant to its regular employment practices and policies, SLUHN pays a fixed, uniform percentage of every employee's group health insurance premium, the remainder being paid by the employee.

55.    SLUHN's "premium discount" policy unlawfully discriminates against employees with religious exemptions insofar as those employees must pay for the entire $1,100.00 premium increase without any contribution from SLUHN. As a result, SLUHN has reduced its overall contribution percentage towards those employees' total annual premiums.

56.    SLUHN's "premium discount" policy, therefore, has resulted in Ms. Jennings and the proposed Class Members paying a higher percentage of their annual health insurance premiums than all other employees solely because their religious beliefs conflict with SLUHN's vaccine mandate. In effect, Ms. Jennings and the proposed Class Members have had their annual compensation reduced by an amount equal to SLUHN's proportional share of the $1,100.00 premium increase. If SLUHN pays, for instance, 50% of every other employee's health insurance premium, then it must contribute the same amount towards the premiums of Ms. Jennings and the proposed Class Members, which would include 50% of the $1,100.00 increase.

57.    As a direct and proximate result of SLUHN's refusal to pay its proportionate share of the $1,100.00 premium hike, Ms. Jennings and the proposed Class Members have had, and continue to have, $42.31 automatically deducted from their paychecks every bi-weekly pay period since January 1, 2022, with no increase in their pay rate or any other offset or contribution from SLUHN.

58.    SLUHN either knew that its "premium discount" policy constituted religious discrimination under Title VII or didn't care if it did. As such, SLUHN's "premium discount"

12

policy was implemented willfully and in knowing violation of federal law and with reckless indifference to the federal rights of Ms. Jennings and the proposed Class Members.

**WHEREFORE**, Plaintiff Jessica Jennings, on behalf of herself and the proposed Class Members, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant St. Luke's Health Network, Inc. and award the following relief:

a.  An order permanently enjoining SLUHN, and any affiliated or related entity over which it exercises control, from enforcing the current "premium discount" policy and from and from promulgating any similar policy that treats employees with religious exemptions from SLUHN's COVID-19 vaccine mandate differently than other employees;

b.  Restitution/back pay in an amount equal to SLUHN's proportionate share of all additional group health insurance premiums paid by Ms. Jennings and the proposed Class Members above the 2021 rate for all pay periods between January 1, 2022 and the date of judgement, plus pre-and post-judgment interest;

c.  Compensatory damages in an amount to be determined at trial;

d.  Punitive damages in an amount to be determined at trial;

e.  All costs and reasonable attorney's fees; and

f.  Any other relief deemed proper and just.

## COUNT III

### FAILURE TO REASONABLY ACCOMMODATE RELIGION IN VIOLATION OF 42 U.S.C. § 2000e-2(a)(1), TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

59.  All preceding allegations are incorporated herein by reference as if same were set forth more fully at length.

60.  SLUHN granted Ms. Jennings and the proposed Class Members an exemption from its COVID-19 vaccine mandate as an accommodation for their sincerely held religious beliefs.

61.  But as a result of SLUHN's "premium discount" policy, Ms. Jennings and the proposed Class Members are now being charged a higher health insurance premium as a consequence of receiving the accommodation *i.e.* the exemption from SLUHN's vaccine mandate.

In effect, Ms. Jennings and the proposed Class Members are being punished for receiving a religious accommodation, thereby rendering the accommodation "unreasonable."

62.    Instead, as a reasonable accommodation, SLUHN could have, and should have, provided Ms. Jennings and the proposed Class Members an exemption from its vaccine mandate without any conditions or consequences (such as a higher health insurance premium), just as it did for those who received exemptions or deferrals for medical or other non-religious reasons.

63.    As a direct and proximate result of SLUHN's "premium discount" policy, Ms. Jennings and the proposed Class Members have been denied a reasonable accommodation for their sincerely held religious beliefs.

64.    As a direct and proximate result of SLUHN's "premium discount" policy, Ms. Jennings and the proposed Class Members have had, and continue to have, $42.31 automatically deducted from their paychecks every bi-weekly pay period since January 1, 2022. In effect, Ms. Jennings and the proposed Class Members have had their take-home pay reduced by roughly $1,100.00 per year solely because of their religious beliefs.

65.    SLUHN's "premium discount" policy, on its face, deliberately burdens and punishes employees, like Ms. Jennings and the proposed Class Members, who received a religious accommodation in the form of an exemption from SLUHN's vaccine mandate, thereby rendering the accommodation "unreasonable." SLUHN either knew that its "premium discount" policy constituted religious discrimination under Title VII or didn't care if it did. As such, SLUHN's "premium discount" policy was implemented willfully and in knowing violation of federal law and with reckless indifference to the federal rights of Ms. Jennings and the proposed Class Members.

**WHEREFORE**, Plaintiff Jessica Jennings, on behalf of herself and the proposed Class Members, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant St. Luke's Health Network, Inc. and award the following relief:

a.    An order permanently enjoining SLUHN, and any affiliated or related entity over which it exercises control, from enforcing the current "premium discount" policy and from and from promulgating any similar policy that treats employees with religious exemptions to SLUHN's COVID-19 vaccine mandate differently than other employees;

b.    Restitution/back pay in an amount equal to all additional group health insurance premiums paid by Ms. Jennings and the proposed Class Members above the 2021 rate for all pay periods between January 1, 2022 and the date of judgement, plus pre-and post-judgment interest;

c.    Compensatory damages in an amount to be determined at trial;

d.    Punitive damages in an amount to be determined at trial;

e.    All costs and reasonable attorney's fees; and

f.    Any other relief deemed proper and just.

## <u>COUNT IV</u>

**DISCRIMINATION BASED ON RELIGION IN VIOLATION OF
42 P.S. § 955(a), THE PENNSYLVANIA HUMAN RELATIONS ACT**

60.    All preceding allegations are incorporated herein by reference as if same were set forth more fully at length.

61.    By promulgating, enforcing, and maintaining the "premium discount" policy, as detailed more fully above, SLUHN discriminated against Ms. Jennings and the proposed Class Members based on their religious beliefs in violation of § 955(a) of the PHRA.

**WHEREFORE**, Plaintiff Jessica Jennings, on behalf of herself and the proposed Class Members, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant St. Luke's Health Network, Inc. and award the following relief:

a.    An order permanently enjoining SLUHN, and any affiliated or related entity over which it exercises control, from enforcing the current "premium discount" policy and from and from promulgating any similar policy that treats employees with religious exemptions from SLUHN's COVID-19 vaccine mandate differently than other employees;

b.    Restitution/back pay in an amount equal to all additional group health insurance premiums paid by Ms. Jennings and the proposed Class Members above the 2021 rate for all pay periods between January 1, 2022 and the date of judgement, plus pre-and post-judgment interest;

c.    Compensatory damages in an amount to be determined at trial;

d.    All costs and reasonable attorney's fees; and

     e.     Any other relief deemed proper and just

<u>**COUNT V**</u>

**DISCRIMINATION BASED ON RELIGION IN VIOLATION OF**<br>**42 P.S. § 955(a), THE PENNSYLVANIA HUMAN RELATIONS ACT**

62.     All preceding allegations are incorporated herein by reference as if same were set forth more fully at length.

63.     By failing and refusing to pay its proportionate share of the $1,100.00 premium increase, as detailed more fully above, SLUHN discriminated against Ms. Jennings and the proposed Class Members based on their religious beliefs in violation of § 955(a) of the PHRA.

**WHEREFORE**, Plaintiff Jessica Jennings, on behalf of herself and the proposed Class Members, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant St. Luke's Health Network, Inc. and award the following relief:

     a.     An order permanently enjoining SLUHN, and any affiliated or related entity over which it exercises control, from enforcing the current "premium discount" policy and from and from promulgating any similar policy that treats employees with religious exemptions to SLUHN's COVID-19 vaccine mandate differently than other employees;

     b.     Restitution/back pay in an amount equal to SLUHN's proportionate share of all additional group health insurance premiums paid by Ms. Jennings and the proposed Class Members above the 2021 rate for all pay periods between January 1, 2022 and the date of judgement, plus pre-and post-judgment interest;

     c.     Compensatory damages in an amount to be determined at trial;

     d.     All costs and reasonable attorney's fees; and

     e.     Any other relief deemed proper and just.

## COUNT VI

### FAILURE TO REASONABLY ACCOMMODATE RELIGION IN VIOLATION OF 42 P.S. § 955(a), THE PENNSYLVANIA HUMAN RELATIONS ACT

64. All preceding allegations are incorporated herein by reference as if same were set forth more fully at length.

65. By promulgating, enforcing, and maintaining the "premium discount" policy, as detailed more fully above, SLUHN failed to reasonably accommodate the sincerely held religious beliefs of Ms. Jennings and the proposed Class Members in violation of § 955(a) of the PHRA.

**WHEREFORE**, Plaintiff Jessica Jennings, on behalf of herself and the proposed Class Members, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant St. Luke's Health Network, Inc. and award the following relief:

      a.    An order permanently enjoining SLUHN, and any affiliated or related entity over which it exercises control, from enforcing the current "premium discount" policy and from and from promulgating any similar policy that treats employees with religious exemptions to SLUHN's COVID-19 vaccine mandate differently than other employees;

      b.    Restitution/back pay in an amount equal to SLUHN's proportionate share of all additional group health insurance premiums paid by Ms. Jennings and the proposed Class Members above the 2021 rate for all pay periods between January 1, 2022 and the date of judgement, plus pre-and post-judgment interest;

      c.    Compensatory damages in an amount to be determined at trial;

      d.     All costs and reasonable attorney's fees; and

      e.    Any other relief deemed proper and just.

17

## DEMAND FOR JURY TRIAL

**PLEASE TAKE NOTICE** that Plaintiff JESSICA JENNINGS, on behalf of herself and all others similarly situated, hereby demands a trial by jury for all claims and issues so triable.

*Respectfully Submitted,*

**MANSOUR LAW, LLC**

*/s/ William P. Mansour*
William P. Mansour, Esquire
Pa. Attorney ID No. 318833
961 Marcon Blvd., Suite 425
Allentown, PA 18109
Tel: (610) 321-3536
Fax: (610) 798-1345
Email: wpm@themansourfirm.com

Attorney for Plaintiff Jessica Jennings

Dated: 03/30/2023

*Respectfully Submitted,*

**THE DOWNEY LAW FIRM, LLC**

*/s/ Philip A. Downey*
Philip A. Downey, Esquire
Pa. Attorney ID No. 81603
P.O. Box 408
Stroudsburg, PA 18360
Tel: (610) 470-5111
Fax: (610) 813-4579
Email: downeyjustice@gmail.com

Attorney for Plaintiff Jessica Jennings

Dated: 03/30/2023