UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA JENNINGS, *ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED*,<br>　　　　Plaintiff<br><br>　　　v.<br><br>ST. LUKE'S HEALTH NETWORK, INC., et al.,<br>　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:   No. 5:23-cv-1229<br>:<br>:<br>:<br>:<br>: |

**O P I N I O N**
**Defendant's Motion to Dismiss, ECF No. 7 – Denied**

**Joseph F. Leeson, Jr.**                                                                                                                      **September 12, 2023**
**United States District Judge**

### I.    INTRODUCTION

      This case deals with an employer's vaccine requirement, subsequent insurance premium increase, and an unvaccinated employee's claims of religious discrimination. Plaintiff Jessica Jennings, on behalf of herself and all those similarly situated, initiated this action against Defendant St. Luke's Health Network, Inc. ("St. Luke's") for religious discrimination and failure to accommodate in violation of Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"). St. Luke's has moved to dismiss all counts or, in the alternative, strike class action allegations. For the reasons set forth below, the Motion is denied. St. Luke's request to strike class action allegations is also denied without prejudice.

## II.     BACKGROUND

The following facts are alleged in the Complaint. On August 9, 2023, St. Luke's instituted a COVID-19 vaccination requirement for all employees. Compl. ¶ 13, ECF No. 1. Employees were permitted to request an exemption for religious beliefs or medical reasons. *Id.* Jennings applied for and was granted a religious exemption in September 2021. Compl. ¶ 14. At least 500 other employees received a religious exemption to the vaccine requirement. Compl. ¶ 15. In October 2021, St. Luke's instituted a policy that all employees would be charged an additional $1,100 per year over the 2021 rate beginning the next calendar year. Compl. ¶ 16. The increase amounted to $42.31 per pay period. Compl. ¶ 22.

Employees were notified of the policy change in an email which was sent only to those with religious exemptions. Compl. ¶ 17, Ex. B. St. Luke's employees with a medical exemption to the vaccine requirement and those who received the vaccine were eligible for a premium discount equal to the $1,100 increase. Compl. ¶ 18. There was no opportunity for employees who received the religious exemption to receive the same discount. Compl. ¶ 19, Ex. B. St. Luke's asserts in the email announcing the policy that the policy was instituted to counteract "more than $3.5 million in expenses over the past 18 months associated with COVID-related hospital care." Compl. ¶ 23, Ex. B.

On March 30, 2023, Jennings initiated this action by filing a Complaint, which alleged Title VII religious discrimination claims under two theories of liability, "failure to accommodate" and "disparate treatment," as well as parallel claims under the PHRA. Compl. pp. 10-17. On June 5, 2023, St. Luke's filed a Motion to Dismiss the Complaint, or in the alternative, requested this Court to strike the class action allegations. Mot., ECF No. 7. Jennings

filed a response in opposition, *see Resp.*, ECF No. 10, St. Luke's filed a reply brief, *see* ECF No. 14.

### III.   STANDARD OF REVIEW – Review of Applicable Law

In rendering a decision on a motion to dismiss under Rule 12(b)(6), this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Also, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**IV.     ANALYSIS**

Before bringing a claim of employment discrimination under Title VII, an employee must first file a claim with the Equal Employment Opportunity Commission ("EEOC") and receive a right-to-sue notice.  *Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376, 385 (M.D. Pa. 2021). Likewise, an employee must also file with Pennsylvania Human Rights Commission ("PHRC") before filing a PHRA claim.  *Leeck v. Lehigh Valley Health Network*, No. 22-cv-4634, 2023 U.S. Dist. LEXIS 108543, at *26 (E.D. Pa. June 23, 2023).  In this case, Jennings has made an appropriate dual-filing with the PHRC and EEOC and received a right-to-sue notice from the EEOC; therefore, she is permitted to bring a private right of action.  *See* Compl., ¶¶ 9-11, Ex. A.

Jennings brings her Title VII and PHRA claims under two theories of liability: disparate treatment and failure to accommodate.  St. Luke's moves to dismiss the Complaint in its entirety for failure to state a claim.  Addressing each theory in turn, this Court will allow Jennings' discrimination claims to proceed under both theories at this time.

To state a *prima facie* case of employment discrimination under Title VII or the PHRA, a "plaintiff must allege that: (1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] held; (3) [she] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination."  *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 541 (E.D. Pa. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  *See Weston v. Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir. 2001) ("The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." (citations omitted)).  However, "[t]o survive a motion to dismiss, an employee need not establish each element of this test, but rather, simply allege sufficient facts to

raise a reasonable expectation that discovery will uncover proof of their claims." *Blackwell v. Lehigh Valley Health Network*, No. 22-03360, 2023 U.S. Dist. LEXIS 10747, at *12 (E.D. Pa., Jan. 23, 2023) (internal marks and citations omitted).  In cases dealing with religious discrimination, employees must have "informed their employers of their religious beliefs prior to the alleged discriminatory action" because, unlike for other discrimination claims like race or gender, "an employee's religion is often unknown to the employer[.]"  *See Morrison v. Access Servs.,* No. 14-4685, 2014 U.S. Dist. LEXIS 146803, at *10 (E.D. Pa. Oct. 15, 2014) (cleaned up).

  A. **Disparate Treatment**

Under a disparate treatment theory of liability, to show that the adverse employment action occurred under circumstances that give rise to an inference of discrimination, an employee may, but is not required to, show that her employer treated other similarly situated employees outside the plaintiff's protected class more favorably.  *Anderson v. Wachovia Mortg. Corp*., 621 F.3d 261, 273 (3d Cir. 2010).

Here, Jennings has stated a plausible case of employment discrimination.  *See Connelly v. Lane Constr. Corp*., 809 F.3d 780, 788-89 (3d Cir. 2016) (explaining that "for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss[,]" and the complaint is only required to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements") (internal marks and citations omitted).  As an initial matter, it is undisputed that Jennings is a member of a protected class due to her religious practice, which she informed St. Luke's about prior to the alleged discriminatory action.  Her qualifications are not at issue.  Further, Jennings suffered an adverse employment action when she was forced to pay a higher insurance premium to maintain

her health benefits, which effectively resulted in a net loss in salary. *See Tourtellotte v. Eli Lilly & Co.,* 636 Fed. Appx. 831, 842 (3d Cir. 2016) ("To constitute an adverse employment action, the action must be 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" (citation omitted)). *See also* Compl., ¶ 22, Ex. B. (explaining that an additional $42.31 was automatically withdrawn by St. Luke's from each bi-weekly paycheck to cover the cost of the premium increase). Finally, the adverse action, i.e. the premium increase, occurred under circumstances giving rise to an inference of discrimination because the *only* employees forced to pay the higher premium were those who had received a religious exemption from St. Luke's vaccination policy, as explained further below.

St. Luke's makes three arguments for why Jennings has failed to state a claim for disparate treatment: (1) St. Luke's did not distinguish among religions of its employees when imposing the premium increase; (2) Jennings failed to allege that St. Luke's had a discriminatory motive; and (3) St. Luke's had legitimate, nondiscriminatory reasons for implementing the premium changes. Mot. pp. 7, 9, 12. The Court addresses, and rejects, each argument in turn.

First, St. Luke's argument that it did not distinguish among religions when imposing the premium increase is disingenuous. The premium increase was effectively only imposed on the employees who received a religious accommodation because St. Luke's gave premium discounts, entirely offsetting the cost of the increase, to all employees except those who were religiously exempt from receiving the COVID-19 vaccination. Necessarily, the increase was only imposed on employees claiming to have a sincere religious belief that prevented them from receiving the vaccination.[1] For instance, an employee belonging to a religion without tenets that

---

[1]   St. Luke's argues that it was required by law to give the premium discount to its medically exempt employees. *See* Mot. at 1. If true, this may be relevant in assessing St. Luke's non-discriminatory motives during the burden-shifting analysis at a later stage. However,

conflict with vaccination would have been unaffected by the premium increase, because that employee would have been vaccinated under St. Luke's vaccine policy and therefore would have qualified for the premium discount. Therefore, this is not a case where the employer treated employees of all religions neutrally.

Second, Jennings has adequately alleged facts that give rise to an inference of discrimination, as previously mentioned, and Jennings is not required to show that St. Luke's had a discriminatory motive at this stage. St. Luke's points to the following statement in the Complaint as an "admission" that St. Luke's lacked discriminatory animus when implementing the policy:

> When one cuts through the clutter of [St. Luke's] convoluted justifications, the true motive behind its "premium discount" policy becomes clear: to "encourage vaccination efforts" so that it can continue to publicly boast that it is "a leader in the fight against COVID-19." In and of itself, *such an objective is not unlawful or discriminatory* and is, indeed, laudable.

Compl. ¶ 37 (emphasis added). However favorable this statement may appear to St. Luke's, the Court is not persuaded that it is an admission from Jennings that St. Luke's lacked discriminatory animus.[2] Even so, the relevant standard of review for this Court to consider is whether Jennings has alleged enough facts to raise a reasonable expectation that discovery will reveal evidence that the premium increase was implemented under circumstances giving rise to an inference of

---

construing the facts in favor of Jennings at the pleadings stage, St. Luke's reason for giving the premium discount to medically-exempt employees does not negate any resultant disparate treatment of religiously-accommodated employees.

[2] Although not mentioned by St. Luke's, later in the Complaint Jennings alleges that the policy "deliberately discriminates against employees whose religious beliefs interfere with [St. Luke's] ambitious vaccination campaign[,] and that St. Luke's "either knew that its 'premium discount' policy constituted religious discrimination under Title VII or didn't care if it did." *See* Compl. ¶ 52. These statements, even if conclusory, undermine St. Luke's argument that Jennings "admitted" that St. Luke's lacked discriminatory animus.

discrimination. As already discussed, Jennings has alleged that the premium increase policy was opted into by St. Luke's only *after* St. Luke's had granted religious accommodations to unvaccinated employees, and then *only* the religiously accommodated employees were forced to pay out of pocket for the premium increase, because St. Luke's gave all other employees an equivalent premium discount. Therefore, taking these allegations as true, employees outside of Jennings' protected class were treated more favorably, and Jennings has adequately alleged circumstances that give rise to an inference of religious discrimination.

Third, St. Luke's nondiscriminatory reasons for implementing the policy are not enough to dismiss the Complaint, though they are relevant to the *McDonnell Douglas* burden-shifting framework that will come into play at a later stage of this case. *See Connelly*, 809 F.3d at 791 "[A]t [the motion to dismiss] stage [Plaintiff] is not obliged to choose whether she is proceeding under a mixed-motive or pretext theory, nor is she required to establish a *prima facie* case, much less to engage in the sort of burden-shifting rebuttal that *McDonnell Douglas* requires at a later stage in the proceedings. It suffices for her to plead facts that, construed in her favor, state a claim of discrimination that is 'plausible on its face.'") (internal citation omitted). Here, Jennings has plausibly stated a claim and need not rebut St. Luke's argument or establish pretext at this stage.³

---

³ Nevertheless, even at this early juncture, the Complaint alleges facts supporting a plausible inference that St. Luke's nondiscriminatory reasons are pretextual. The primary reason that St. Luke's proposes for implementing the premium increase are the "cost-saving benefits" of the increase. *See* Mot. at 12. St. Luke's argues that had it granted a premium discount to the approximately 500 unvaccinated, religiously exempt employees, this would have "eviscerated" these cost-saving benefits. *Id.* However, Jennings points out in the Complaint that although St. Luke's justifies the implementation of the premium increase as a response to the "more than $3.5 million in expenses over the past 18 months associated with COVID-related hospital care" for unvaccinated employees and their family members, *see* Compl. ¶ 23, Ex. B, the apparent cost to St. Luke's of providing the premium discount to its vaccinated and medically-exempt employees was approximately $18 million in 2022. *See* Compl. ¶ 29.

B. **Failure to Accommodate**

Absent undue hardship, Title VII requires employers to reasonably accommodate employee religious needs. *See* 42 U.S.C. § 2000e(j). To state a failure to accommodate claim, "an employee must allege that (1) [she] held a sincere religious belief that conflicted with a job requirement, (2) [she] informed [her] employer of the conflict, and (3) [she] was disciplined for failing to comply with the conflicting requirement." *Winans v. Cox Auto., Inc.*, No. 22-3826, 2023 U.S. Dist. LEXIS 114726, at *6 (E.D. Pa. July 5, 2023) (cleaned up) (citing *Fallon v. Mercy Cath. Med. Ctr.*, 877 F.3d 487, 490 (3d Cir. 2017)).

Generally speaking, a "reasonable accommodation" is one that removes the conflict between an employee's religious beliefs and an employer's employment requirements. Further, "*any* reasonable accommodation by the employer is sufficient to meet its accommodation obligation[,]" and an employer is not required "to choose any particular reasonable accommodation" or the one specifically requested by the employee. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) (emphasis added). Likewise, there is not "a duty [imposed] on the employer to accommodate at all costs." *Id*. at 70. In some instances, a proposed accommodation may not be reasonable if it causes a reduction in pay or loss of benefits to the recipient. *See Baker v. Home Depot*, 445 F.3d 541, 548 (2d. Cir. 2006) ("[A]n offer of accommodation may be *unreasonable* if it causes an employee to suffer an inexplicable diminution in his employee status or benefits.") (internal marks and citation omitted) (emphasis in original); *Ansonia*, 479 U.S. at 70-71 (holding that an unpaid leave policy for religious observances was a reasonable accommodation because "the direct effect of unpaid leave is merely a loss of income for the period the employee is not at work; such an exclusion has no direct effect upon either employment opportunities or job status" but further opining that unpaid

leave would *not* be a reasonable accommodation where "paid leave is provided for all purposes *except* religious ones") (emphasis in original). *See also Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984) ("A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all."). The question of whether a particular accommodation is reasonable, or whether it causes an undue hardship to an employer, are often fact-specific inquiries evaluated on a case-by-case basis. *See Shannon v. City of Philadelphia*, No. 98-5277, 1999 U.S. Dist. LEXIS 2428, at *10 (E.D. Pa., Mar. 5, 1999) (holding, in the ADA context, that "[w]hether granting the additional leave requested was a reasonable accommodation and whether the [defendant] could provide it to [the plaintiff] without undue hardship are factual inquiries that are not properly decided in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)"). *See also Gravely v. Speranza,* 219 F. App'x 213, 215 (3d Cir. 2007) (per curiam) ("[D]etermining the question of reasonableness is frequently one that should be left to the ultimate factfinder . . . .").

In the Complaint, Jennings alleges that the accommodation received was rendered unreasonable by the premium increase, which "punished" the employees that received a religious exemption from St. Luke's vaccine policy. Compl. ¶ 61. To further support the failure-to-accommodate theory of liability, Jennings argues in her responsive briefing that excluding her from receiving the premium discount rendered her previously granted accommodation, the exemption from the vaccine, ineffective.[4] Resp. pp. 9-10. Here, the Court finds that Jennings

---

[4] Jennies relies on several ADA cases regarding "ineffective" accommodations to support her argument in her responsive briefing. *See* Resp. pp. 9-10. However, because this Court does not find these cases particularly persuasive on this Title VII issue, the Court will analyze the accommodation in terms of its reasonableness, rather than efficacy, pursuant to Title VII. *See*

has plausibly stated a discrimination claim under the failure-to-accommodate theory, because the loss of income associated with the premium increase may have rendered the religious accommodation unreasonable.

St. Luke's, however, makes two arguments for why Jennings has failed to state a claim. First, that Jennings never requested a religious accommodation from the premium increase and, second, that efficacy of the vaccine accommodation was not altered by the premium increase. Resp. p. 14. Reply p. 5. The Court rejects both arguments.

First, St. Luke's points out that the Complaint states neither Jennings "nor any other proposed Class Member ever requested a premium discount as an accommodation for their sincerely held religious beliefs." *See* Compl. ¶ 27. St. Luke's argues that this admission is enough on its own to dismiss the failure to accommodate theory by framing the discount as an "accommodation" that Jennings failed to request.[5] *See* Compl. Ex. B ("While your religious exemption permits you to remain employed at St. Luke's, we are unable to grant you an additional accommodation for a premium discount, since doing so would impose an undue hardship."). However, Jennings is not alleging that St. Luke's failed to accommodate her

---

*Groff v. DeJoy*, __ U.S. __, 143 S. Ct. 2279, 2295 (2023) (clarifying the undue hardship test under Title VII and declining to simply adopt ADA case law for the Title VII analysis).

[5]   St. Luke's further argues that allowing the religiously exempt employees to receive the premium discount would have caused an undue hardship because of the additional cost associated, approximately $550,000. Though an accommodation may sometimes constitute an undue hardship on an employer as a matter of law, *see Webb v. City of Philadelphia*, 562 F.3d 256, 258 (3d Cir. 2009), here, it is not clear as a matter of law that the approximated cost to St. Luke's would fit the bill, particularly considering that St. Luke's was already providing approximately $18 million in premium discounts to its other vaccinated or medically exempt employees. Additionally, because the undue hardship analysis is a fact-specific inquiry, St. Luke's argument is premature at the motion to dismiss stage. *See Miller v. Tithonus Tyrone, L.P.*, No. 3:20-cv-31, 2020 U.S. Dist. LEXIS 75429, at *12 (W.D. Pa., April 29, 2020) (explaining that a plaintiff is not required at the pleading stage to show that the accommodation was not unduly burdensome).

religious needs by refusing to grant her the premium discount; she is alleging that St. Luke's rendered her religious accommodation to the vaccine requirement "unreasonable" by forcing her to pay an insurance premium increase and effectively reducing her net pay as a result. Further, even accepting St. Luke's argument that the premium discount was an "accommodation," Jennings is not required to show that she asked for a particular accommodation at the pleading stage. *See Miller v. Tithonus Tyrone, L.P.*, No. 3:20-cv-31, 2020 U.S. Dist. LEXIS 75429, at *12 (W.D. Pa., April 29, 2020) (explaining that a plaintiff is not required at the pleading stage to show that she asked for an accommodation).

Second, in light of the resultant financial burden placed on Jennings, the Court cannot find as a matter of law that the vaccine accommodation was reasonable without additional fact finding. Construing all of the facts in the light most favorable to Jennings, a reasonable fact finder could conclude that the additional $1,100 yearly cost placed on Jennings as a result of requesting a religious accommodation was a punishment by St. Luke's for failing to comply with the vaccine requirement that rendered the previously granted accommodation unreasonable.

\* \* \*

Because Jennings has stated a plausible case of religious discrimination under both theories of liability, St. Luke's motion to dismiss is denied. Discovery will ultimately reveal whether one or both theories will fit the facts of this case, and St. Luke's premature defenses may be more appropriately raised at a later date.

C. **Class Action Certification**

St. Luke's argues that Jennings' class action claims should be struck for two reasons. First, a finding of commonality is precluded under Rule 23(a)(2) where each claim requires an individualized inquiry into the sincerity of each class member's religious beliefs. Second,

Jennings cannot establish predominance or superiority for a Rule 23(b)(3) class.  *See* Mot. p. 17.  However, the Court is not persuaded that striking the class allegations at this juncture would be appropriate.

"Courts are generally reluctant to strike class action allegations before the parties have the opportunity to engage in discovery or before a motion to certify is before the court." *Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 182 (M.D. Pa. 2008).  "Nevertheless, a district court will strike class action allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action."  *Gould v. EEG, Inc.,* No. 3:17-77, 2018 U.S. Dist. LEXIS 246975, at *3 (M.D. Pa., Sept. 20, 2018) (citing *Zarichny v. Complete Payment Recovery Serv*s., 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015)).  The Third Circuit has, however, cautioned against striking class action allegations prior to discovery, remarking that there are a "rare few [cases] where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  *See Landsman & Funk PC v. Skinder-Strauss Assocs*., 640 F.3d 72, 93, n.30 (3d Cir. 2011) (citation omitted).

Here, the record as presently developed does not clearly demonstrate that Jennings cannot meet the requirements for a class action, nor does it allow the Court to conduct the "rigorous analysis" required to thoroughly evaluate the Rule 23 factors.  *See In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 318 (3d Cir. 2008).  Therefore, St. Luke's request to strike Jennings' class action claims is denied without prejudice.  St. Luke's may renew its arguments if and when Jennings moves for class certification.

## V.     CONCLUSION

For the reasons set forth above, the Motion to Dismiss is denied and St. Luke's request to strike class action allegations is denied without prejudice. A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge