IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA JENNINGS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ST. LUKE'S HEALTH NETWORK, INC. t/d/b/a ST. LUKE'S HOSPITAL, ST. LUKE'S HOSPITAL OF BETHLEHEM, PENNSYLVANIA and ST. LUKE'S UNIVERSITY HEALTH NETWORK,<br><br>Defendant. | No. 5:23-cv-01229-JFL<br><br>CIVIL ACTION – LAW |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES,
AND SERVICE AWARD**

Jessica Jennings ("Named Plaintiff"), by and through her undersigned counsel, hereby submits this unopposed motion for final approval of the class action settlement in this matter, award of attorneys' fees, and service award to Named Plaintiff and, in support thereof, states as follows:

**I.      HISTORY OF THE PRESENT LITIGATION**

1.      On March 30, 2022, as required under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"), Named Plaintiff filed a Charge of Discrimination ("Charge") against Defendant, on behalf of herself and all others similarly situated, with the U.S. Equal Employment Opportunity Commission ("EEOC"), which she dual-filed with the Pennsylvania Human Relations Commission.  The EEOC investigated Named Plaintiff's allegations but did not issue a Determination. Following her receipt of a Notice of Right to Sue from the EEOC on January 26, 2023, Named Plaintiff commenced the instant action on March 30, 2023 as a class action on behalf of herself and all others similarly situated.

2.      Named Plaintiff's EEOC Charge and Class Action Complaint raised novel and complex issues of employment law involving the interplay between Defendant's ability to institute "activity-based wellness programs" under federal law and the right of Named Plaintiff and the

proposed Class Members to be free from workplace religious discrimination under Title VII and the PHRA.

3. Specifically, Named Plaintiff's Charge and Class Action Complaint alleged that, beginning in January 2022, Defendant violated the foregoing statutes by instituting an "activity-based wellness program" that effectively imposed on her and the proposed Class Members a health insurance premium "surcharge" equal to $1,100.00 per year because they received exemptions from Defendant's COVID-19 vaccine mandate based on their sincere religious beliefs. (Doc. 1, ¶¶ 16-18). Named Plaintiff further alleged that only she and the proposed Class Members paid the premium "surcharge," while every other employee (including other unvaccinated employees) received a premium "discount" equal to $1,100.00 per year. (*Id.* at ¶¶ 19-21). Named Plaintiff claimed that Defendant imposed the surcharge.

4. Based on these material facts, Named Plaintiff asserted six (6) causes of action in her Class Action Complaint: (1) discrimination based on religion in violation of Title VII arising from the premium surcharge; (2) discrimination based on religion in violation of Title VII arising from Defendant's failure to pay an equal portion of Named Plaintiff's health insurance premium compared to other employees; (3) failure to reasonably accommodate religion in violation of Title VII arising from the premium surcharge; (4) discrimination based on religion in violation of the PHRA arising from the premium surcharge; (5) discrimination based on religion in violation of the PHRA arising from Defendant's failure to pay an equal portion of Named Plaintiff's health insurance premium compared to other employees; and (6) failure to reasonably accommodate religion in violation of the PHRA arising from the premium surcharge. (*Id.* at ¶¶ 48-65).

5. As far as the undersigned is aware, the legal claims and issues presented in this matter are ones of first impression, not just in this circuit, but in every circuit across the country.

6. On or about June 5, 2023, Defendant filed a Motion to Dismiss the Class Action Complaint. (Docs. 7 and 7-1). On June 25, 2023, Named Plaintiff submitted a brief in opposition. (Doc. 10). On July 10, 2023, Defendant submitted a reply brief in further support of its Motion to Dismiss. (Doc. 13).

7. On September 12, 2023, this Court denied Defendant's Motion to Dismiss in its entirety, concluding that the claims in Named Plaintiff's Class Action Complaint were legally sufficient and that it was premature to strike her class action allegations. (Docs. 17-18).

8. To date, Defendant vehemently denies any wrongdoing or liability and maintains that its decisions were lawful and for legitimate safety and business reasons.

9. On January 29, 2024, Named Plaintiff filed an unopposed Motion for Preliminary Approval of Class Settlement. (Doc. 26). On March 12, 2024, this Court entered an order preliminarily approving the proposed Class Action Settlement, including the proposed attorney's fee and service awards, and authorizing the mailing of settlement notices to all potential Class Members. (Doc. 27).

## II. THE PROPOSED TERMS OF SETTLEMENT

10. Following this Court's decision, the parties, through their counsel, spent the next three (3) months engaging in informal discovery and arms-length negotiations of a class-wide settlement. As part of the informal discovery, which was conducted with an eye towards settlement, Defendant disclosed to Named Plaintiff the number of employees who received a religious exemption, the number of those who paid the surcharge in 2022 and 2023, and the amount of surcharge each such employee paid in each year. This information allowed the undersigned to ascertain the approximate value of economic damages recoverable in this case. Based on the information provided, the estimated premium "surcharges" collected from Named Plaintiff and the proposed Class Members between January 1, 2022 and December 31, 2023 total $388,335.00.

11. This preliminary discovery and the ensuing negotiations culminated in an agreement in principle on November 10, 2023. The material terms of this agreement were later reduced to a written "Confidential Settlement Agreement and Release," a true and correct copy of which is attached hereto as **Exhibit A** and is incorporated herein by reference.

12. The material terms of the "Confidential Settlement Agreement and Release" are as follows:

    a. Defendant agrees to cease enforcing its COVID-19 premium surcharge policy as of December 31, 2023, and further agrees that, going forward, neither it nor any of its affiliate entities will re-introduce the same or a

      similar premium surcharge policy affecting only those with religious exemptions to the COVID-19 vaccine requirement.

b.     Defendant will pay a Total Settlement Amount of **Five Hundred Sixty Thousand and 00/100 Dollars ($560,000.00)**, which shall resolve and satisfy all monetary obligations under the Agreement, including all attorneys' fees, litigation costs, payments to Qualified Settlement Class Members, all applicable taxes, and interest.

c.     In addition to the above amount, Defendant will pay **up to Five Thousand and 00/100 Dollars ($5,000.00)** to make payments to Qualified Settlement Class Members who are added to the Class, or whose allocation is increased pursuant to Section 3.5 of the Agreement.

d.     The "Individual Settlement Amount," *i.e.* the amount allocated to each Settlement Class Member under the Agreement, will take into account the **entire** health insurance premium surcharge that each Settlement Class Member paid between January 1, 2022 and December 31, 2023. Payments of these amounts shall be paid within thirty (30) days of the Effective Date of the Agreement.

e.     Defendant will mail a "Notice of Settlement of Class Action Lawsuit & Fairness Hearing" to every Settlement Class Member within thirty (30) days after the Court grants the instant Motion. This Notice will: (1) advise the Settlement Class Members of their right to opt-out of the class or object to the terms of the settlement; and (2) provide Settlement Class Members with specific instructions for how they may either opt-out of the class or object to the terms of the settlement, including the date and means by which they must do same.

f.     Within thirty (30) days after the close of the Opt-Out and Objection period, Class Counsel will file with the Court a Motion for Final Approval of the settlement along with a petition for award of attorney's fees and costs in an amount not to exceed **One Hundred Seventy Thousand and 00/100 Dollars ($170,000.00)**, which equates to approximately **30.3%** of the Total Settlement Amount. Any amount of attorney's fees or costs not awarded by the court shall be allocated and distributed equally among the Settlement Class Members.

g.     Simultaneously with the Motion for Final Approval and the petition for award of attorney's fees, Class Counsel shall petition the Court for a Service Award to Named Plaintiff in the amount of **One Thousand Six Hundred Sixty-Five and 00/100 Dollars ($1,665.00)** to compensate her for the efforts she made in advancing this case on behalf of herself and the proposed Class.

h.     Defendant shall pay all Qualified Settlement Class Members their approved Individual Settlement Amounts by way of check mailed to each such class member within thirty (30) days following this Court's final approval of the Settlement, or as soon thereafter as practicable

4

i. Any funds from the Total Settlement Amount that remain unclaimed after one hundred twenty (120) days will be paid (subject to this Court's approval) to the Hispanic Center Lehigh Valley as a *cy pres* award for the purpose of advancing health equity in the Lehigh Valley.

## III. THE PROPOSED SETTLEMENT CLASS

13. Pursuant to Fed.R.Civ.P. 23(e), the parties seek to have a class of plaintiffs certified by the Court for purposes of settlement only. The parties have agreed to the following class definition:

> all individuals who: (1) received a religious exemption from Defendant's COVID-19 vaccination requirement between August 1, 2021 and December 31, 2023 **and** (2) paid any portion of the healthcare premium surcharge in 2022 or 2023 to which vaccinated employees or employees with a medical exemption or deferral were not subject.

### A. The Proposed Settlement Class Satisfies All Prerequisites Under Fed.R.Civ.P. 23(a).

#### Numerosity

14. Based on the records produced by Defendant, the proposed Settlement Class is comprised of three hundred and eight (308) individuals. Given the number of potential Class members, joining them all as individual plaintiffs in this action would be impracticable.

#### Typicality

15. Named Plaintiff and the proposed Settlement Class Members all have tangible and legally protectable interests at stake in this action.

16. Named Plaintiff's claims and those of the proposed Settlement Class Members have a common origin and share a common basis. Specifically, their claims originate from the same COVID-19 premium surcharge policy created and enforced by Defendant.

17. Named Plaintiff and the proposed Settlement Class Members all have claims that are typical of each other. If brought and prosecuted individually, Named Plaintiff's claims and those of each Settlement Class Member would necessarily require proof of the same substantive facts, rely upon the same legal theories, and seek the same relief.

#### Commonality

18. The questions of law and fact common to the claims of Named Plaintiff and the proposed Settlement Class Members include, without limitation:

5

a. Whether Defendant imposed on Named Plaintiff and the Settlement Class Members a health insurance premium "surcharge" in the amount of $1,100.00 per year ($42.31 per bi-weekly pay period) starting on January 1, 2022 because they received religious exemptions from Defendant's COVID-19 vaccine requirement;

b. Whether Defendant withheld an additional $42.31 from the paychecks of Named Plaintiff and the Settlement Class Members during any pay period between January 1, 2022 and the present to cover the $1,100.00 premium surcharge;

c. Whether Defendant's imposition of the premium surcharge on Named Plaintiff and the Settlement Class Members constitutes discrimination based on religion in violation of Title VII and the PHRA;

d. Whether Defendant's failure to pay its proportionate share of the premium surcharge for Named Plaintiff and the Settlement Class Members constitutes discrimination based on religion in violation of Title VII and the PHRA; and

e. Whether Defendant's imposition of the premium surcharge on Named Plaintiff and the Settlement Class Members constitutes a failure to reasonably accommodate their sincerely held religious beliefs in violation of Title VII and the PHRA; and whether forgoing imposing a premium surcharge on Named Plaintiff and Settlement Class Members would have posed an undue hardship on Defendant.

**Adequacy of Representation**

19. Throughout the pendency of this action, Named Plaintiff has willingly and ably served the Court and the proposed Settlement Class Members in a representative capacity and has fulfilled all her obligations and responsibilities attendant thereto. To date, Named Plaintiff has fairly and adequately protected the interests of the proposed Settlement Class Members. Named Plaintiff is willing and able to continue serving in this capacity through final disposition of this action, whether by way of settlement or judgment after trial. There are no known conflicts of interest between Named Plaintiff and any of the proposed Settlement Class Members.

20. Throughout the pendency of this action, Named Plaintiff and the proposed Settlement Class Members have been competently and ably represented by William P. Mansour, Esq. of Mansour Law, LLC. Said counsel has nearly a decade of experience litigating employment discrimination cases in federal court, has adequately prosecuted this case, and has zealously asserted, protected, and defended the rights and interests of Named Plaintiff and all proposed Settlement Class Members. *See* **Exhibit B – Declaration of William P. Mansour, Esq.**

### B. The Proposed Settlement Class Should Be Certified Under Fed.R.Civ.P. 23(b)(2) and/or 23(b)(3).

21. Named Plaintiff alleges in the Class Action Complaint that, through imposition of its premium surcharge, Defendant acted on grounds that apply generally to the proposed Settlement Class Members. To that end, the Class Action Complaint seeks predominately class-wide injunctive relief against Defendant—namely, the enjoining of its COVID-19 premium surcharge policy. Should Named Plaintiff establish liability against Defendant, such relief would be appropriate respecting the proposed Settlement Class as a whole. *See* Fed.R.Civ.P. 23(b)(2).

22. Moreover, the common questions of law and fact set forth in paragraph 17, above, predominate over any such questions affecting only individual Settlement Class Members. As such, a class action is superior to other available methods for the fair and efficient adjudication of the controversies alleged herein because:

    a. the commonality of the Settlement Class Members' claims greatly reduces or eliminates any individual Class Member's interests in controlling the prosecution of their own separate actions;

    b. the relatively small size of the proposed Settlement Class makes managing the class action far less difficult; and

    c. the costs of litigating the individual claims of each proposed Settlement Class Member would far exceed the monetary value of what any one of them has at stake.

### IV. THE FAIRNESS AND ADEQUACY OF THE PROPOSED SETTLEMENT

23. In *Girsh v. Jepsen*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit articulated nine (9) relevant factors a district court should consider in assessing the fairness and adequacy of a proposed class action settlement. These factors are:

      a.     the complexity, expense and likely duration of the litigation;

      b.     the reaction of the class to the settlement;

      c.     the stage of the proceedings and the amount of discovery completed;

      d.     the risks of establishing liability;

      e.     the risks of establishing damages;

      f.     the risks of maintaining the class action through the trial;

      g.     the ability of the defendants to withstand a greater judgment;

      h.     the range of reasonableness of the settlement fund in light of the best possible recovery;

      i.     the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 157.

24.     In an effort to synthesize the numerous factors used by the various Circuit Courts of Appeals to assess the fairness of a class action settlement, Rule 23(e)(2) directs courts to consider whether: (A) the class representative(s) and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risk, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3); (D) the proposal treats class members equitably relative to each other. Fed.R.Civ.P. 23(e)(2)(A)-(D). Many of these factors overlap with those stated in *Girsh*.

25.     Under the relevant factors articulated in *Girsh* and Rule 23(e)(2), the terms of the Confidential Settlement Agreement and Release are fair, adequate, and reasonable for the following reasons:

      a.     Class Counsel and Named Plaintiff have secured monetary relief for the proposed Settlement Class in the amount of $560,000.00, which is equal to 144% of the proposed Class's estimated monetary damages, *i.e.*, the $388,335.00 in premium surcharges collected from Named Plaintiff and

8

       the Settlement Class Members between January 1, 2022 and December 31, 2023.

b. In addition to monetary relief, Class Counsel and Named Plaintiff have secured class-wide injunctive relief by way of Defendant's agreement to cease enforcing its COVID-19 premium discount policy as of December 31, 2023 and to refrain from re-introducing the same or a similar policy affecting only those with religious exemptions to the COVID-19 vaccine requirement.

c. Besides securing the instant settlement for the proposed Settlement Class, Named Plaintiff and Class Counsel have otherwise adequately represented the proposed Settlement Class throughout the pendency of this action.

d. Given the novel legal issues presented in this case, the Total Settlement Amount fairly and adequately accounts for the risk and expense associated with protracted class action litigation. Although Named Plaintiff's claims were able to survive a motion to dismiss, Named Plaintiff was still required to obtain (and maintain) class certification and overcome several affirmative defenses and legitimate, non-discriminatory reasons asserted by Defendant.

e. Furthermore, the ability of each Settlement Class Member to recover non-economic damages (*i.e.* compensatory and/or punitive damages) faces several complex procedural and substantive hurdles (*e.g.* class certification, bifurcation, proof, etc.). In light of these complexities, there is a substantial risk that, after a lengthy and bifurcated trial, there will be little to no recovery for non-economic damages. Despite these risks, Named Plaintiff and Class Counsel were able to secure an additional $171,675.00 as part of the Total Settlement Amount in addition to the $388,335.00 in economic damages.

  f.  The terms of the Agreement were the result of arms-length and, at times, sharply adversarial negotiations between counsel for the parties occurring over a period of three (3) months.

  g.  Although Defendant is likely able to withstand a judgment for an amount significantly greater than the Total Settlement Amount, this factor is less relevant here because the proposed Settlement Class Members are receiving full compensation for all monetary harm. *See Young v. Tri County Sec. Agency, Inc.*, No. 13-5971, 2014 WL 1806881 *7 (E.D.Pa. May 7, 2014) (finding seventh *Girsh* factor to be "irrelevant here because individual class members are receiving full compensation"). Nevertheless, because all proposed Settlement Class Members will be receiving 100% of their estimated monetary damages (even after accounting for Class Counsel's requested attorney's fee), the Total Settlement Amount is reasonable in light of the best possible outcome after trial. *See, e.g., McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 646 (E.D.Pa. 2015) (finding that settlement amount equal to "24 percent of estimated actual damages" was reasonable under last *Girsh* factor); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 489-90 (E.D.Pa. 2003) (finding 15% recovery of estimated damages was reasonable under last *Girsh* factor); *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616 *16 (E.D.Pa. Apr. 22, 2005) (finding class settlement in the range of 9.3%-13.9% of estimated damages was reasonable).

  h.  A Class Action Settlement Notice previously approved by the Court was mailed by Defendant to all proposed Settlement Class Members at their last known address on April 10, 2024. After mailing, three Notices were returned to St. Luke's as undeliverable. All three Settlement Class Members were contacted in accordance with the procedures set forth in Section 2.4(b) of the Settlement Agreement and notices were timely re-mailed to those individuals' updated address.

    i.    According to the Notice, the deadline for Settlement Class Members to object to, or opt-out of, the proposed Class Action Settlement was May 20, 2024.

    j.    As of June 5, 2024, no Settlement Class Member has submitted an objection to the terms of the Class Action Settlement, including the attorneys' fee and service awards.

    k.    As of June 5, 2024, twelve (12) Settlement Class Members have submitted valid notices of their decision to opt-out of the proposed Class Action Settlement. True and correct copies of these notices are attached hereto as **Exhibit C.**

    l.    All Settlement Class Members are treated equitably with respect to each other as **all** Class Members will receive an Individual Settlement Amount that accounts for the total premium "surcharges" they paid between January 1, 2022 and December 31, 2023.

    m.    All Individual Settlement Amounts shall be paid promptly to each Class Member by check within thirty (30) days after final approval by the Court, or as soon as thereafter is reasonably practicable.

    n.    Any funds that remain unclaimed from the Total Settlement Amount or not awarded as attorney's fees by the Court shall **not** revert to Defendant but shall instead be donated to the Hispanic Center Lehigh Valley as a *cy pres* award or distributed equally among all proposed Class Members, respectively.

26.    In addition to the foregoing, Named Plaintiff's request for an award of attorneys' fees to Class Counsel in the amount of $170,000.00 (roughly 30.3% of the Total Settlement Amount) is fair and reasonable for the following reasons:

    a.    Named Plaintiff and the proposed Settlement Class Members have been competently and ably represented by Class Counsel throughout the pendency of this action. Class Counsel became licensed to practice law in Pennsylvania in October 2014. Since that time, Class Counsel has regularly

11

       engaged in the practice of law in Pennsylvania. **Ex. B at ¶ 1.** Between July 2015 and April 2018, Class Counsel's practice focused mainly on employment and civil rights defense for various municipalities and municipal entities throughout central and eastern Pennsylvania. *Id.* at ¶ **2.** From April 2018 through the present, however, Class Counsel has been representing exclusively plaintiffs in employment law matters throughout central and eastern Pennsylvania, many of which are ultimately litigated in this district. *Id.* In January 2021, Class Counsel opened his own plaintiff's employment law firm in Allentown, PA, through which he continues to practice. *Id.* at ¶ **3.**

b. A percentage-of-recovery fee equal to about 30.3% of the Total Settlement Amount falls squarely within the range of amounts typically awarded as reasonable attorneys' fees in common fund, class action cases within this Circuit. *See, e.g., Hall v. Accolade, Inc.*, No. CV 17-3423, 2020 WL 1477688, at *9 (E.D. Pa. Mar. 25, 2020) (median fee award in surveyed class actions was 33.33%); *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 768 (E.D.Pa. 2016) (observing that "a benchmark of one-third of the settlement fund is often appropriate to prevent a windfall to counsel"); *Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, 2013 WL 5276109, at *6 (M.D. Pa. Sept. 17, 2013) ("[A]n award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit.").

c. To date, Class Counsel estimates he has handled over 200 employment-related cases, many of which have involved the active litigation of claims under 42 U.S.C. §§ 1981 and 1983, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Fair Labor Standards Act, the Equal Pay Act, the Family Medical Leave Act, the Pennsylvania Human Relations Act, the Pennsylvania Wage Payment and Collection Law, the Pennsylvania

|     |     |
| --- | --- |
|     | Minimum Wage Act, the Pennsylvania Equal Pay Law, and the common law. ***Id.* at ¶ 4.** |
| d.  | Since 2014, Class Counsel has tried eight (8) civil cases to verdict: two (2) as defense counsel and six (6) as plaintiff's counsel. Of these eight (8) trials, three (3) were tried before a jury and all but one (1) were tried in Pennsylvania state courts. In addition, Class Counsel was lead trial counsel in four (4) of these trials. The primary legal issues in these trials included negligence (3), breach of contract (3), and wrongful discharge (2). ***Id.* at ¶ 5.** |
| e.  | To date, Class Counsel has expended 105.1 hours of time prosecuting this action, including preparation of this Motion. ***Id.* at ¶ 9; Exhibit D – Time Ledger for William P. Mansour, Esq.** Class Counsel's regular hourly rate is $285.00. ***Id.* at ¶ 10.** This is a reasonable hourly rate and is comparable to those rates charged by attorneys with similar experience performing similar work in the Eastern District of Pennsylvania. ***See* Exhibit E – Affidavit of Gregg L. Zeff, Esq.** |
| f.  | Therefore, using the lodestar method, the reasonable value of Class Counsel's work on this case to date equals $29,953.50. |
| g.  | Even after Class Counsel's requested attorney's fee and costs are accounted for ($170,000.00), the remaining portion of the Total Settlement Amount ($390,000.00) will be sufficient to fully refund **all** proposed Class Members **all** premium surcharges paid between January 1, 2022 and December 31, 2023 ($388,335.00) and to provide a modest Service Award ($1,665.00) to Named Plaintiff. |
| h.  | Crosschecking Class Counsel's requested percentage-of-recovery fee ($170,000.00) against his lodestar ($29,953.50) yields a lodestar multiplier of 5.68. Although the Third Circuit Court of Appeals has observed that lodestar multipliers "ranging from one to four are frequently awarded in common fund cases where the lodestar method is applied," *In* |

*re Prudential*, 148 F.3d 283, 341 (3d Cir. 1998), it is not unusual for district courts within the Third Circuit to approve fee awards with higher multipliers that "reflect the risks of nonrecovery facing counsel . . . serve as an incentive for counsel to undertake socially beneficial litigation, or . . . reward counsel for an extraordinary result." *Id.* at 340; *see also In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D.Pa. 2005) (approving fee award with lodestar multiplier of 6.96); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 WL 1213926, *18 (E.D.Pa. May 19, 2005) (approving fee award with lodestar multiplier of 15.6); *Muchnick v. First Fed. Sav. & Loan Assoc.*, No. 86-1104, 1986 WL 10791, *(E.D.Pa. Sept. 30, 1986) (approving fee award with lodestar multiplier of 8); *Frederick v. Range Resources-Appalachia, LLC*, No. 08-288, 2011 WL 1045665, *13-14 (W.D.Pa. Mar. 17. 2011) (approving fee award with lodestar multiplier of 5.95); *In re AmerisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (approving fee award with lodestar multiplier of 4.3); *Demaria v. Horizon Healthcare Services, Inc.*, No. 11-07298, 2016 WL 6089713, *5 (D.N.J. Oct. 18, 2016) (approving fee award with lodestar multiplier of 4.3).

i. Class Counsel agreed to represent Named Plaintiff and the proposed Class on a contingency fee basis with no guarantee of payment for fees or advanced costs. **Ex. B at ¶¶ 6-8; Exhibit F – Class Action Contingency Fee Agreement, § 4.** "'Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval.'" *Whiteley v. Zynerba Pharma., Inc.*, No. 19-4959, 2021 WL 4206696, *12 (E.D.Pa. Sept. 16, 2021) (quoting *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. 2012)).

j. In addition, Class Counsel was able to achieve an "extraordinary result" for the proposed Settlement Class resulting in each Class Member receiving

14

        full compensation for *all* economic damages. *See Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-cv-05135, 2019 WL 1499475, *6 (E.D.Pa. Apr. 5, 2019) (Leeson, Jr., J.) (observing that "[t]he most significant factor in setting fees is the result obtained for the class"). Recovery of all estimated damages as part of a class action settlement is a rare occurrence. *See, e.g., McDonough,* 80 F. Supp. 3d at 646 (class recovery equal to only 24 percent of estimated actual damages); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d at 489-90 (class recovery equal to only 15% of estimated actual damages); *Nichols v. SmithKline Beecham Corp.,* No. 00-6222, 2005 WL 950616, *16 (class recovery of only 9.3%-13.9% of estimated actual damages).

   k. In light of the foregoing, the requested fee of $170,000.00 (or roughly 30.3% of the settlement fund) is fair and reasonable.

27. Named Plaintiff also requests a Service Award in the amount of $1,665.00 to compensate her for her efforts in prosecuting and resolving this class action, which is fair and reasonable for the following reasons:

   a. Service awards "exist to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n. 65 (3d Cir. 2011). Courts will generally consider the following factors in determining the propriety of a Service Award: (1) the financial or other risk to the named plaintiff in commencing litigation; (2) the notoriety and/or personal difficulties encountered by the representative plaintiff; (3) the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; (4) the duration of the litigation; and (5) the plaintiff's personal benefit (or lack thereof) purely in her capacity as a member of the class. *Altnor*, 197 F. Supp. 3d at 770.

   b. As to the first factor, when Named Plaintiff filed her Charge with the EEOC in March 2022 and this lawsuit in March 2023, she was employed by Defendant. Plaintiff resigned her employment with Defendant in July

2023. Between March 2022 and July 2023, while she was still employed by Defendant, Named Plaintiff undertook a significant risk in commencing this action against her employer. In doing so, Named Plaintiff risked not only her professional reputation, but, given the politically-charged nature of the COVID-19 vaccines, also risked being criticized and ostracized by co-workers, friends, and even family members who disagreed with her. These risks were even more prevalent given that this lawsuit received widespread local news coverage shortly after it was filed, including a front-page article in the Morning Call and an evening news feature on WFMZ. *See Altnor*, 197 F. Supp. 3d at 770 (rejecting requested Service Award, in part, because "the risks associated with speaking out against a current employer are not present" for former employee); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 410 (7th Cir. 2000) (affirming district court's denial of service award to named plaintiff because he was a "former employee" and did not suffer or risk retaliation by defendant).

c. As to the third factor, although Named Plaintiff was not deposed and did not engage in extensive formal discovery, she did regularly correspond with Class Counsel throughout the pendency of this action and provide him the information necessary to prepare her EEOC Charge, her EEOC rebuttal, and her Class Action Complaint. Named Plaintiff was also actively involved in settlement negotiations.

d. As to the fourth factor, Named Plaintiff has been actively involved in this matter since it was first commenced before the EEOC.

e. As to the fifth factor, because Named Plaintiff only paid the premium surcharge in 2022, her Individual Settlement Amount will be $1,100.06. Some Class Members, however, paid the full surcharge in 2022 and 2023 and may, therefore, receive Individual Settlement Amounts up to

        $2,200.76.[1] Including her requested Service Award, Named Plaintiff's total individual recovery in this case will be $2,765.06. This amount is only 26% more than what the highest paid, non-representative Class Member will receive, which accounts for the risk she undertook to commence this litigation. *Compare Altnor*, 197 F. Supp. 3d at 771 (rejecting Service Award that would result in named plaintiffs getting paid 52% more than the highest paid class member).

    f.    Finally, the amount of the requested Service Award falls within the range of service awards approved by courts in employment class and collective actions. *See, e.g.*, *Altnor*, 197 F. Supp. 3d at 772 (approving Service Award of $1,410.80 in FLSA collective action); *Weirbach v. Cellular Connection, LLC*, No. 5:19-CV-05310, 2020 WL 6581498, *5 (E.D. Pa. Nov. 10, 2020) (approving a $3,500 Service Award in an FLSA collective action); *Tompkins v. Farmers Ins. Exch.*, No. 14-CV-3737, 2017 WL 4284114, *8 (E.D. Pa. Sept. 27, 2017) (approving Service Awards ranging from $4,000 to $5,000 per representative); *Mayer v. Driver Sols., Inc.*, No. 10-CV-1939, 2012 WL 3578856, *5 (E.D. Pa. Aug. 17, 2012) (approving a $15,000 Service Award in a Title VII class action where the representative participated in depositions, document production, and mediation).

28.    For all the foregoing reasons, this Court should approve the Settlement under the criteria described in Fed.R.Civ.P. 23(e)(2) and enter proposed final approval order submitted herewith.

29.    Upon approval of the class action settlement, an in accordance with Section 3.2 of the Agreement, Defendant will provide to each Class Member the Final Settlement Notice attached hereto as **Exhibit G** reflecting each Class Member's Individual Settlement Amount.

30.    The undersigned certifies that he has sought and received concurrence in this motion from Defendant's counsel.

---

[1] This amount includes the equal allocation among the remaining Settlement Class Members of the Individual Settlement Amounts that would have otherwise been paid to the twelve (12) Class Members who chose to opt-out.

**WHEREFORE**, Named Plaintiff Jessica Jennings respectfully requests that this Honorable Court **GRANT** her instant motion for final approval and enter the attached proposed order.

Date: June 5, 2024                                     *Respectfully Submitted,*

                                                       **MANSOUR LAW, LLC**

                                                       /s/ William P. Mansour
                                                       William P. Mansour, Esquire
                                                       961 Marcon Blvd., Suite 425
                                                       Allentown, PA 18109
                                                       Tel: (610) 321-3536
                                                       Fax: (610) 798-1345
                                                       Email: wpm@themansourfirm.com

                                                       Counsel for Settlement Class


**CERTIFICATE OF COUNSEL**

I, William P. Mansour, Esq., hereby certify that I have sought concurrence in this motion from Defendant's counsel, who does not contest same.

                                                       /s/ William P. Mansour
                                                       William P. Mansour, Esquire